May it please the Court. Good morning, Your Honor. It's Douglas Drury on behalf of Appellants Lisa Obechon and Peter Pestalozzi. I have co-counsel arguing today on behalf of co-appellants, the Thomas appellants. Okay. Keep your voice up. And are you going to split the time half and half? Is that what you intend? Your Honor, I plan on taking 12 minutes. Okay. And Ms. Barnes will take 8 minutes. And from my 12 minutes, I'd like to reserve a couple of minutes for rebuttal. Your Honor, the Court below committed error by placing two limiting principles on the application of absolute immunity to the civil RICO filing at issue in this case. First, the Court said that there has to be a statutory basis for the action and there has to be an express statutory basis. And second, the Court said that in order to apply absolute immunity in a civil case, the case has to be a civil enforcement action akin to a criminal filing. In both of those limiting principles, A, we met the Court's standards, but more importantly, the standards the Court imposed were erroneous. On the first standard, oh, the standards are inconsistent with the functional analysis that we're going to be talking about as enunciated in Imbler, Butts, Fry and the other cases that we've cited. But on the first point, the Court said at excerpt of record, page 53, that the lack of absolute immunity in this case turns on the lack of statutory authority to bring a Federal RICO action as an enforcer of that statute, which leaves the public lawyer here in the same position as officers of the State and private lawyers. But that limiting principle is inconsistent with the functional analysis as set forth in all of the cases that we've cited, starting with Stump v. Sparkman, where the Supreme Court said that a judge who signed off on a sterilization order had absolutely zero statutory authority to do that, and yet he was entitled to absolute immunity. I'm not sure I entirely agree with the rationale advanced by the district judge. But, of course, we can affirm on any ground. Yes. What strikes me as to what seems to have been going on here is, and it's pretty extensively alleged in this complaint, and there are a few more things that come out of other complaints in this consolidated case, but we've only got one left, as you know, that there's basically a war going on between the sheriff and his allies and the defendants in other cases who have now become the plaintiffs in this case. And as part of that war, now I'm just kind of working off the complaint to try and paraphrase it, we had a civil RICO action filed, and it was filed in December, and then it was dismissed voluntarily in March. I look at our Lacey en banc case, not a coincidence, I guess, that it's really involving the sheriff again, and Judge Bybee writing for the en banc court says something that I find actually quite interesting, that one of the reasons for absolute immunity for prosecutors is that the prosecutor's actions are, quote, filtered through a neutral and detached judicial body. This complaint was filed. There was a press conference announcing victory when the complaint was withdrawn because the DOJ was going to look into it. DOJ two days later, the representative says they're dismayed because that's not at all what DOJ said it was going to do. This does not appear to me as though this complaint was, quote, filtered through a neutral and detached judicial body. This was a blow that was struck, then withdrawn. This does not look like serious litigation. This looks like I'm going to attack you with a lawsuit that I will then voluntarily withdraw. That does not strike me as something that comes within something close enough to the criminal prosecutorial function. I understand that the cases take us outside the criminal prosecutorial function. I understand that certain civil enforcement actions do. I understand that we've got fairly broad language in some of our cases that say civil actions, even if not enforcement actions, do. But the premise for all of those cases, it seems to me, is that they're bona fide actions. I don't as I look at what happened here as alleged in the complaint, this was not a bona fide action. You filed it in December. You withdraw. Dismiss it voluntarily in March. Why is this close enough to the criminal process that we should give absolute immunity? My answer is going to be long, Your Honor. Well, my question was long. Several points. First, on Lacey, that is an interesting point that you raised from Judge Bybee. But the standard enunciated in the cases with Frye in all these cases is not, in this particular case that we're talking about, was this evidence subject to judicial review? But the question is, is it capable of being subject to judicial review? In other words, is it the type of case that's in the court system? For example, if you look at it. Was there ever any intention that it would be? The suggestion here is, well, they file it and they withdraw it. Was there – now, this is not in the complaint, so that would be outside what I've got in front of me. Was there any motion to dismiss? Did the judge ever rule on anything having to do with this case? There was a motion to dismiss. The judge did not rule. And the Court raises a very good point, because that is not the allegation here that this was done. Certainly, there are a lot of allegations that a lot of what the sheriff's office did was for publicity. But the court-specific allegation here that this was just sort of a hit-and-run type of thing is not stated in the complaint. Well, we have the hit and we have the run. Is there anything that can be described as judicial oversight that caused this complaint to be dismissed? Well, yes. There was a pending motion to dismiss pointing out all the flaws in the pleading, the fact that it was a hit-and-run. I'm talking about anything the judge did. I don't even know that the judge read that. The judge did not act. But, again, they talk about judicial oversight. Even after the case was dismissed, there was judicial oversight. It was voluntarily dismissed. There was nothing stopping the RICO defendants from going to the court and alleging bad faith. Arizona State has the State of Arizona has a bad faith filing statute that allows for the imposition of penalties. It's 12-549. And so if they thought that was what was going on in that case, they had a remedy. They didn't have to go to a 1983 action to seek a remedy. They could have gone directly to the court and saying, hey, this wasn't even a real case. We had plenty of remedy. And, you know, the Lacey case is instructive for that reason. The court is instructive. I'm sorry, did you say Lacey is what? Instructive. Thank you. Okay. Sorry about that, Your Honor. Oh, it's just the room. It's okay. Counsel, it's good if I could ask you a question about this RICO suit. Yes. The complaint, as I read it, alleged that the RICO complaint asked for relief for the benefit of the sheriff and the prosecutor personally. And, you know, I've read the complaint. It's somewhat ambiguous. You know, there are some parts of the prayer that might raise that issue and other parts of the complaint that look like it's for the county. But if there's an allegation that parts of this complaint are for the benefit not of the county, but for the benefit of the sheriff or for the prosecutor personally, would that not take it out of absolute immunity? It wouldn't, Your Honor, and that's because for two reasons. One, first let me say, you're asking a hypothetical, and I disagree with the premise in that there's not personal relief sought. There's a quote in the decision talking about the sheriff seeking treble damages. But the full quote of that prayer for relief goes on to say that it's for the denial of his receipt of services from the Maricopa County Attorney's Office. So it's clear there, when you read the entire prayer for relief, that he's seeking damages on behalf of his office. And we set forth in the brief the numerous allegations of official capacity, and that's set forth fully. And also the Heath case says when the sheriff's acting, even naming himself, that it means he's acting for the sheriff's office. But to answer your hypothetical directly, ARS 12 or 13-2314 provides for a person to file a civil RECO action on behalf of individuals. Now, it doesn't – it requires them to file it in State court, and this matter was filed in Federal district court. But that gets back to the Ibarra case, which talks about you don't have to have direct authority to file. It has to be something within the prosecutor's supervision and control. And 13-2314 shows that a RECO action on behalf of individuals is something that's available, that's within this prosecutor's supervision and control. And that broad scope in the Ibarra case is really what controls here. Further, in Stump and Ashelman, if they filed in the wrong court, both those cases say the fact that there were even grave procedural errors in filing in the wrong court or under the wrong statute, maybe that, doesn't deprive the prosecutor of absolute immunity. And in the West Side. Okay. Let me ask you a follow-up question on that. The complaint I think – am I right this complaint was dismissed on a 12b-6 or a summary judgment, which – This is a 12b-6, Your Honor. Okay. So if it's a 12b-6, we have to look at the allegations of – of the complaint in this case. Yes. And the allegations of the complaint in this case allege that the RICO suit was for the benefit of the sheriff and the prosecutor personally. It alleges that was the relief side. I looked at the RICO complaint, and I certainly think it's somewhat ambiguous on that point. But if the – if the complaint in this action says that it was seeking relief for them personally, which is a slightly different issue, but it's related to the one Judge Fletcher raised about whether this is a bona fide lawsuit, if the complaint says it's for them personally, how on a motion to dismiss can – can it get absolute immunity with, you know, with that allegation? Two points, Your Honor. I believe what the Court is referring to is paragraph 205 of the second-minute complaint. But that doesn't allege that they were praying for relief personally. It alleges that they – the plaintiffs, Thomas and Arpaio, alleged personal harm, and they did. Thomas said there was a threat against his bar license and there was a personal threat against his wife. But those factual allegations were made in the context of this ongoing battle between the various departments. And what the Court – I'm sorry. What is not alleged in the complaint is that there was personal relief sought. And if you look at the prayer for relief, and we went through that in our – in our brief, there isn't personal relief sought. But I would also say, even if this Court said, well, I think it's ambiguous and maybe there's personal relief sought here and it's not clear, then we get back to just because personal relief is sought, that doesn't take it out of the ambit of absolute immunity. There was apparent authority to file a civil RICO action on behalf of individuals, even if those individuals were Thomas and Arpaio. And that's something within the supervision and control of the county attorney's office, and that's where the Court below erred by narrowly limiting the immunity doctrine. They read it way too narrowly. I'm not sure. Thank you, counsel. Thank you. Now, Ms. Drury, Ms. Barnes, Mr. Drury took some of your time, but it wasn't his fault. Why don't we put 8 minutes on the clock? That would be great. Thank you, Your Honor. And then we'll see what we – this is a tricky case, and we're not going to cut anybody off. Okay. Thank you. I certainly appreciate it, and it is. It's a very complicated case. I, however, am actually only going to be covering two more, certainly not small topics, but smaller topics in comparison to what Mr. Drury has already covered. The first is the challenge to this Court's jurisdiction, and the second is the claim that the bar ruling has some sort of collateral estoppel effect here. As to the jurisdiction, it is clear from the cases that we've cited and the evidence in the actual procedural posture of this case that this Court has jurisdiction on this interlocutory appeal. Pelley's sole argument, really, in challenging the jurisdiction is that they claim that there was a factual dispute or factual findings made here that precludes the interlocutory appeal, and that's simply not the case. As pointed out by Judge Gould earlier, we're dealing with a motion to dismiss here. And in the judge's ruling below, the district court's ruling below, he makes it very clear at ER 45 of that ruling that he does take all allegations of the complaint as true, and in fact, he includes the underlying RICO complaint as well, taking all of those allegations as true, because Stapley did request judicial notice of it, and they refer to it frequently throughout their complaint. Allegations in the RICO complaint as true in the sense that those were the allegations. Exactly. Those were the allegations. And so then what the district court below did is draw certain inferences from those and then apply what it believes the law on absolute immunity is to those inferences. And all that we have challenged as appellants here is that the legal conclusions reached were incorrect for the reasons that my colleague has now discussed more in depth with you as well as raised in our briefing. The appellees seem to hinge this sort of distortion or mischaracterization of where we are in this case on just two aspects of the district court's ruling, which are incorrect. First, they point to one sentence in the ruling at ER 52, which is a quote, the facts of this case are much more analogous to Connell. Well, of course, the district court there was simply comparing the facts of the case, because it just acknowledged that it's taking them all as true, so they're undisputed, comparing those facts to facts of another case in order to try to figure out how the law has been applied previously and what it believed was a similar situation. What appellees are suggesting is that any time a court does that, that it cannot have interlocutory appeal, and that would have an absurd result. Of course, it would actually essentially dismantle absolute immunity, because as we know, the purpose for interlocutory appeal on immunity is, and I'm citing or I'm quoting from Mitchell v. Foresight, the rationale to allowing interlocutory appeal grounded on immunity is that the claimed right to immunity includes the right not to proceed to trial. This right would be lost if not immediately reviewable. Right, counsel, and it does get to be circular. I really appreciate that absolute immunity means freedom from having to defend against the suit. And in a hypothetical that you'd see in a Horn book, it would be really black and white conduct that would allow your clients to seek, or any client, right, to seek absolute immunity and kill the litigation right out of the box. But it gets to be really difficult, doesn't it, when the complaint is really, it's quite ambiguous about whether, what this conduct was, whether it's a personal vendetta or a war, as Judge Fletcher described it, or something else. Well, I think, and I, two points. One, that is true, a fair characterization for purposes of doing the absolute immunity inquiry itself. But as to jurisdiction, just to stick with that, which I'm talking about, and I'll address the other as well, but for purposes of jurisdiction, it is clear, because, again, they are taking the allegations as true. I'll grant you that for purposes of this, the jurors' criminal claim. But it really, to me, it just feeds right back into the problem that Judge, I think it was Judge Gould, is raising. Certainly. And I do understand. But what I want to point out is that, again, because the district court says it's taking all the allegations, and there are, there is some ambiguity in not only the Stapley's complaint, but, of course, the RICO complaint itself. But it is not ambiguous that there is not a prayer for relief for personal damages to be given to Mr. Thomas or Sheriff Arpaio in their personal capacities. It does not say that anywhere in the complaint or the RICO complaint. The prayer for relief is clear, that they're seeking damages to address their failure to, their inability to be able to enforce the laws of the State, i.e., Mr. Thomas, and for the sheriff, as a sheriff in the sheriff's office, to receive legal services from the Maricopa County's office as the sheriff's office is entitled to. That argument would be a lot stronger if the RICO complaint had been filed under State law as opposed to Federal law, right? I think the argument is more clear, certainly, if it was filed under State law rather than Federal law, because of the nature of the statutes. But going back to what Mr. Drury was talking about, which is, you are talking about the judicial process, and prosecutors and judges alike are allowed to make liable civilly, personally and civilly, for those damages. Sure, but they can't have it both ways. I mean, and this is a problem that's been plaguing me as I look at these pleadings, because your clients aren't laypeople, they're lawyers, and so surely they appreciate the difference between filing in State and Federal court. And that's why it's really difficult for me to not join Judge Gould, and I think what it sounds like is his view, is that there's some, at least, ambiguity in whether or not they weren't seeking to pursue this lawsuit in their individual capacities. Well, I would argue respectfully that that aspect of it is really not ambiguous. The plaintiffs are named only, only in their official capacities, and the prayer for reliefs only seeks damages for their offices or for them as the sheriff and the county attorney. Aren't they essentially proceeding under the private attorney general provision in the Federal statute? That is what Judge Wake is sort of comparing it to. Why is he wrong? Why is he wrong? Again, he's wrong because there are statutes in Arizona that allow the prosecutors or the county attorneys to pursue these types of remedies for these alleged wrongs. Under the State RICO statute, and that's where it's a gotcha, isn't it? It does become circular because your clients are not laypeople, and they appreciate that there's a State statute and there's a Federal statute, and here they are. Well, certainly, but I think that that argument actually works in our favor on absolute immunity, because the purpose of absolute immunity is to protect these particular government officials, these prosecutors and judges alike. And even if they make, as Stump and Ashelman point out, even if they make grave procedural errors, even if they do it for the wrong motive or with bad faith, that does not preclude them from being entitled to absolute immunity. They are doing something that is arguably within the realm of something they would do as a prosecutor, and whether or not they utilize sometimes the wrong mechanisms or inartful language in pursuing the remedies they're pursuing does not mean they're not absolute immune. And, in fact, as Imbler and Frey and all of them point out, there is a way to hold these folks accountable, and that is through the disciplinary measures that are instituted by the bar and the judicial canons for lawyers or for judges, and in this case, that is what's happened. Well, you said you wanted to talk about that, actually. Your time is up, but let's make sure you get a chance to say something about that before you sit down. I appreciate that, Your Honor. Appellees have asked for judicial notice to be taken of the bar ruling, and all that means is we take notice of the fact that it is in existence and it is what it is. They then, in a footnote, in a single footnote in their brief, indicate that there should be a collateral estoppel effect on some of the issues found in that ruling. That's an attempt by them, again, in just this one footnote, at offensive collateral estoppel, and they rely on the Wetzel case. The problem here is there's a couple of problems. First, as this Court actually has just recently pointed out, and this case is not cited in our brief, so I'll give you the full cite, American Family v. Clancy, 2013, West Country, 4161, March 12th, 2013, Ninth Circuit. That case has pointed out that Wetzel is actually, and it's an appellate court decision out of Arizona, is actually inconsistent with a prior Supreme Court decision out of Arizona, and that is the Standage Ventures case. And what the Ninth Circuit has just said is it's not clear whether Arizona even allows offensive collateral estoppel, while Wetzel suggests that, in following the new statement on judgments, that it would, it doesn't clearly overturn. I trip over this case name all the time, Standage Ventures, and so that it's unclear whether or not Arizona has made that complete transition to allowing it. So that's obviously the first problem, whether or not it's even acceptable in Arizona, and it's not clear that it is. More importantly, the Clark v. Bear Stearns case, which we cite, precludes the use of it in any event. You have to have identical issues. You have to have the same standards of proof, or burdens of proof. You don't have either of those here. More importantly, the burden is on the parties seeking offensive collateral estoppel to establish that it's appropriate. And that case specifically says you cannot merely present the prior judgment or the prior ruling and rely on that alone. You have to present the transcripts of the proceeding, the full record. The Court needs to be able to make a complete transition. Roberts. And this may all be that at some point, perhaps it is, but at the complaint stage, maybe not. Exactly. And that hasn't happened here. And, again, the issues in the Barr ruling are very different because they do, if you've read it, it's 200-plus pages of this political vendetta and war. And that's what was considered there and whether or not the ethical rules are violated. Okay. Thank you very much. Good morning. Larry Wolkin for the appellees, and may it please the Court. In Imbler v. Pacman, the Supreme Court stated that prosecutors enjoy absolute freedom of expression and absolute immunity in connection with their activities that are intimately associated with the criminal process. The Court went on in the Butts case to explore the outlining activities which comprised that functional approach that was adopted in Imbler and asked two questions that is instructive on this Court. One, is there a historical basis or a common law basis for the immunity claimed? And if there is, is there also a reason why it's important to recognize absolute immunity in order to shield government officials from vexatious litigation from unhappy litigants? More recently, in Chalkboard and in Lacey, this Court denied absolute immunity where officials acted outside of their authority. And under this framework, where there has already been a final judgment from the office of the presiding disciplinary judge that Thomas and Obishon acted outside of their authority in filing and pursuing the RICO lawsuit, it's our position that they should not be afforded absolute immunity. Now, I want to pick up on the argument we had at the very end then from Ms. Burns. I understand that both of the defendants in this suit have been disbarred. Are we allowed to, even if offensive non-mutual collateral were allowed, are we allowed to take that into account here at the 12b6 stage? I believe you are, Your Honor, because of the fact, because it's a final judgment in Arizona, an order of disbarment, even if it's under appeal, and Thomas did not disbarment, Ms. Obishon did appeal hers, that is permitted to be used in offensive collateral estoppel situations, as the Court pointed out in Wetzel. No, my question is slightly different from that. It's not whether offensive non-mutual collateral estoppel would be available in an ordinary lawsuit based on this. And I understand there's some dispute about that. I'm not putting that to one side. But I'm asking a different question. Can we look at that at the 12b6 stage? I think the answer is yes, for the same reason that the courts in the 12b6 stage can look at matters outside of the pleading. If there's no dispute as to their accuracy, if they're a matter of public record, there's a lot of case law that says that. But you see, there may well be some dispute as to whether or not this form of estoppel is available and what happened and so on. And I think that that's the issue that's confronting in Wetzel, and that's the reason why I believe that collateral estoppel is appropriate in this situation. But even if it weren't, we would still maintain that there are many other reasons why absolute immunity should not be applied in this case. The Federal RICO statute, which is what the RICO case was filed under, is both a law enforcement tool and a remedial statute that has a private cause of action contained therein. It's a law enforcement tool to the extent that 18 U.S.C. 1964b allows an attorney general to seek certain types of injunctive and other relief that is perfectly consistent with its law enforcement function. It's a ---- But if they have absolute immunity, they can make a mistake. Judges make mistakes. Judges cite the wrong statute sometimes. What's your response to opposing counsel's argument that they made a mistake? The question of whether or not there was a mistake is made seems to be more appropriately judged on an issue of qualified immunity. They can make mistakes. They can even take bad acts under qualified immunity. What the critical distinction is, or what the analysis should surround, is whether or not the function which they were pursuing is a law enforcement function. Absolute immunity attaches to the function, not the person who is utilizing the function. Yeah. Counsel, I know that, of course, and I've read your briefs, but I'm not sure that you're really answering the question, because one of the strongest arguments seems to me that you've got is that because they were proceeding under the Federal statute and not the State statute, that the function they were really pursuing was the what's been called today a war or a private vendetta. So opposing counsel's argument is they made a mistake. They should have been doing this under the other statute, and I shouldn't draw the inference that they were proceeding in their individual capacities just because they filed under the Federal statute. Well, two points. One, I think even if they were pursuing under the State statute, they would only be entitled to qualified immunity for pursuing this function. In other words, bringing a remedial measure as a private right of action. If they were revoking a license, if they were seizing the car that's used in the getaway, I think there's no question that those are law enforcement activities for which the prosecutor would be afforded absolute immunity. On the other hand, if they're pursuing a damages lawsuit, then I think that they're only entitled to qualified immunity because that function, the function of filing a civil damages suit on behalf of an ordinary litigant, in this case it's Sheriff Arpaio, but it is who it is, and I think they're only afforded qualified immunity because that is not something that's typically associated with the or it's intimately associated with the judicial process in a criminal case. Well, you know, we've got some rights. And of course, we've moved well beyond just the criminal origins of this in Imbler. We see it in Butts, and we see it in some of the cases here, so that the prosecutors are entitled to absolute immunity even when they're bringing at least certain kinds of civil suits. You, I gather from the argument you're making, want to limit those civil suits in which there is absolute immunity to some form of enforcement suits. I think we've got language in some of our cases, not Supreme Court cases, but in some of our cases that simply say civil suits without the qualifier. How do you deal with that? I think what you're specifically referring to is Frye. And the unfortunate language for us, and I think for the circuit, frankly, in Frye, is that it starts by citing, by quoting directly from Imbler and doesn't finish the quote. What it's, what the quote in Frye is, is that prosecutors are protected for their time associated with the judicial phase, and then the next three words which appear in Imbler are left off, which is that are the phase of the criminal process. And so that's why the Court in Canal and in our case held that that language is dicta. And I think it's instructive, because the issue in Frye was whether a tax enforcement proceeding was akin to a criminal enforcement process, and it relied on flood. And I think there's a ton of common law cases and support for the fact that that is a function which is intimately associated with the criminal process. So while I certainly concede that there is broad language in Frye, I also would urge that, just like the district court found, just like the court in Canal found, that that language that you're referring to is dicta. It was not central to the holding. And I don't see a reason why we would need to extend the protections of qualified immunity so far out to encompass this type of scenario when the already robust protections under qualified immunity, as recognized in Harlow, exist. So in Kalina v. Fletcher, the Supreme Court reiterated that absolute immunity is an extreme remedy, and it's justified only when a lesser degree of immunity could impair the judicial process. In Lacey — I'm sorry. Sotomayor, I'm wondering if you could help me figure out whether the long question that I asked of your adversary a bit ago, which is a slightly different rationale from that advanced by the district court, will work in this case. What we've got, clearly, is a civil case, and it's a non-enforcement-of-state-law civil case, so we're at the outer boundaries of absolute immunity. If we treat the Frye language as binding rather than dictum, it may still be within absolute immunity. On the other hand, as I look at this lawsuit, it doesn't look to me as though it's a lawsuit that it was actually designed to be pursued. The allegations in the complaint are that before it was filed, they were — the two defendants were advised repeatedly by sophisticated lawyers that this suit was meritless. They file it. They withdraw it within just a few months voluntarily. Is that enough to take it outside absolute immunity, irrespective of whether or not they're seeking private damages relief, irrespective of the other things that we've been discussing? I think it is, only because there would not — I don't think there's any authority that the common law recognized that sort of action as being intimately associated with the filing of a complaint, the presentation of the State's case, seeking an arrest warrant, all of the things which have traditionally been afforded absolute immunity are so very different from what happened in this case, as is demonstrated by your hypothetical. And at the beginning of the question, you asked, well, under Frye, wouldn't that activity all be covered by the absolute immunity? The answer is, probably, if the language in Frye were truly the law, but there's a ton of case law, including this Court's en banc decision in Lacey, which has — which has clearly held that when a prosecutor acts outside of his normal activity, outside of those functions which are normally associated with the criminal justice system, that he's not afforded that immunity. And under Frye, it seems to me that the pertinent question is not what is the function that the prosecutor is performing, but rather who is performing the function. Under Frye, whenever a prosecutor acts, seemingly he would be entitled to immunity, which ties into that kind of absurd hypothetical that we point out in our briefs, where the county attorney alleges that he got into a car accident and he sues the alleged tortfeasor when it turns out that he was not even in a car when he got injured. And he would say, well, I filed it because I was the county attorney, and because I was injured, I couldn't enforce the laws, and, therefore, I'm entitled to absolute immunity. And, oh, well, just in case I got it wrong, it's a broad-sweeping immunity and I'm protected. And I — A much easier hypothetical. That's a much easier hypothetical. Of course. What's your strongest argument that the function performed by these folks, Abachon and Thomas, was outside the school? Well, there's two answers. The first is that there's absolutely no support in the common law, which is where we're told to look first to determine if it is intimately associated with those activities that are traditionally within the purview of the prosecutor. But the second is the two Arizona statutes which we cite, which, A, precludes a county attorney from practicing in the — practicing law privately. And I understand this isn't where he's opening up a law firm, but he — and acting on his own. But what he is doing is he's enforcing a private right of action on behalf of Sheriff Arpaio. And so I think under 11-403, I think he's prohibited from doing that. And also, he can't present a claim against the county. And so if you take everything that is alleged in the RICO complaint as true, that's what he's really doing. He's suing the county. He's suing the county's legislators, which is who Don Stapley is, who we represent. He's suing judges who afford those legislators deference because he's part of this county war. And those two statutes specifically, in our opinion, proscribe the action that he has taken in this case by filing the RICO lawsuit. And in Lacey, this Court recently noted in determining what functions are prosecutorial is an inexact science. It's difficult to do. These are — these are hard cases. But when the checks which are inherent in the system — in other words, those statutes which tell the prosecutor or the county attorney what he can and can't do are circumvented when he goes outside of that process, just like the prosecutor did in Lacey. He doesn't get to then say, I'm absolutely immune. It goes back to a comment you made yesterday, Judge Christian, in a slightly different context that this is still America. And there's something very antithetical to — That roller skating is going to haunt me all week. Indeed. Indeed. There's something very antithetical to the notion that a prosecutor can file whatever the heck he wants in any court he wants, then says, well, because I'm the prosecutor, I can do that and I can make mistakes and I can be malicious. I understand that the immunity should be applied broadly, but not when the prosecutor is skirting his authority. And there's something that I think needs to be responded to that Mr. Drury said, and that is this. He said there are remedies available under Arizona law. That is flatly untrue. There would be a remedy available if a prosecutor filed a wrongful forfeiture action under the State law, but there's a ton of case law out there that says if you file a private right of action under the Federal statute, you don't get attorney's fees if you lose. In — under Arizona law, you do, which is a reason why it makes very little sense to extend immunity in this context, because it thwarts the very purpose of Section 183, which is to ensure that when officials do act outside of their authority and when they do act in ways that are reprehensible to the Constitution, that there is a remedy for the person who — who has been the victim of that action. This is a little far afield, but in response to what you just said, it occurs to me to ask, is there such a thing as a malicious prosecution civil suit in Arizona under Arizona law against a prosecutor who has brought a frivolous civil suit? There is — well, we have followed the restatement. There's a wrongful institution of civil proceedings tort which Arizona has recognized. So the answer is yes. And would that be available against a prosecutor who has instituted a malicious or frivolous civil suit? I think it would, assuming that the prosecutor isn't entitled to absolute immunity. It's just the same as it would be actionable against any lawyer who would file a baseless action. So if I were filing a baseless action on behalf of my client under the restatement, both my client and I could be sued for that act. There's a different linked question. And it's not really fleshed out very much in any of the papers that I've seen. But you've got both Federal cause of action and you've got State causes of action. And absolute immunity, as we're now talking about it, is all in the context of basically 1983, and we'll say more broadly under Federal law. It's certainly available to Arizona, should it so choose, not to protect its prosecutors by absolute immunity from suits brought under State law. Do you know what the state of the law is with respect to prosecutorial immunity under suits brought against prosecutors under State law? I do. Arizona follows Imbler. So that's why it's not fleshed out. Okay. Correct. That's exactly right. So in concluding, I think I would leave the Court with this. Judge Wake was correct when he said on page 42 of his order that the RICO case was patently frivolous, but that's not the issue before the Court, and that's not what absolute immunity turns on. It turns on whether there's statutory authority to bring Federal RICO actions as the enforcer of the statute, which leaves the public lawyer here in the same position as the State officers and private lawyers in an ordinary suit brought under the private remedy section of the Federal RICO statute. Okay. Thank you. Any further questions from the bench? No. Okay. Thank you very much. Thank you. Now, we've taken both of you over, but we would like to give you a chance to respond. Let's put three minutes on the clock, and then we can go from there. I'll go as quickly as I can, Your Honor. First, to comment on Mr. Wolkin, Rule 11 would also be available in the Federal case if they thought there was improper conduct in that regard. I want to address some points that Judge Christin raised. First, regarding this private AG provision, the Frye case relied – took its language directly from the Barrett v. U.S. case, which was a Second Circuit case. In that case, the defense attorneys were the prosecutors, and they were defending a wrongful death case. And in a District of California case, Hart, it was the same thing. The prosecutors were acting as defense attorneys in a civil case. So they were acting just as private lawyers act. And what Mr. Wolkin is therefore asking you to do is basically to overturn Frye and say it has to be a civil enforcement action, and you'd be moving away from the line of cases that we've cited. The Court also raised the issue of – oh, I want to address the hypothetical that Mr. Wolkin raised. Actually, that sort of proves our case. The cases talk about not is there statutory authority to do this, did the Court have authority to take this specific action, but the Ibarra case talks about is this something within the control of supervision as a general matter? Ashelman does the same thing. Are these the kind of things that prosecutors do? And so if you've got an automobile accident case like he discussed, no, that's completely outside the scope of authority of what a prosecutor does, and they'd be completely outside of immunity protection. Now, if it were available to us or to the district judge to take judicial notice of the disbarment, and I understand there's a dispute as to whether or not we can take judicial notice, if anything, beyond the fact of the disbarment, and we could take as at least a plausible allegation for purposes of 12b-6 that non-neutral offensive collateral estoppel is available so that we have a finding that this was absolutely outside what they did, and so far outside, they got disbarred, where does that leave you? I would say two things about that, Your Honor. First, the fact of the disbarment actually supports what we're saying, that there are remedies against bad-acting officers other than that. But I'm getting to your question now. Can I answer that question? Yeah. Answer your question. I don't think collateral estoppel can apply in any event, because the Court in the Bar Review Court did two things that are anathema to what we're doing here. First, they focused on things that are not relevant to this inquiry. All of the factors, if you look at that Bar ruling where they considered the reasons for the disbarment, had to do with motive, bad faith, et cetera. And the cases are unanimous. This Court can't consider bad faith or motive in making its determination as to whether immunity applies. And Ireland v. Tunis is just one example of the cases that we cited there. And also the second part, that the Bar Court did not look at the factors that we need to look at here, which is the function being performed in the immunity analysis that this Court has to go through. All of those things were completely irrelevant to the Bar inquiry, and therefore, since the standards of review there were completely different than the standards here, collateral estoppel can't attach. Thank you. I do have 30 seconds. No, you owe us 30. OK. I think both sides, nice arguments on both sides, a difficult case. Maybe that Sheriff Arpaio will be responsible for all kinds of immunity law before we're finished with this whole string of cases. Donahoe v. Arpaio now submitted for decision. And that concludes our argument for the day.
judges: Fletcher, Gould, Christen